**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL HARRIS,

  Plaintiff,                                    CASE NO.:

-VS-

ARCTIC AIR AND REFRIDGERATION,
INC. and DANIELS, NEWMAN AND
ARMSTRONG,

  Defendants.
_____/

**COMPLAINT**
**AND DEMAND FOR TRIAL BY JURY**

Plaintiff, MICHAEL HARRIS ("Mr. Harris" or "Plaintiff"), alleges violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et. seq.* ("FDCPA") and Florida's Consumer Collections Practices Act, Florida Statutes, §559, Part VI, *et. seq.* ("FCCPA"), against Defendant, ARCTIC AIR AND REFRIDGERATION, INC. ("Arctic Air") and Defendant, DANIELS, NEWMAN AND ARMSTRONG ("DNA") (collectively "Defendants").

**INTRODUCTION**

1.    The FDCPA was enacted as an amendment to the Consumer Credit Protection Act. Its purpose is to eliminate abusive debt collection practices by debt collectors.

2. The FCCPA was devised as a means of regulating the activities of consumer collection agencies within the state of Florida to combat a series of abuses in the area of debtor-creditor relations and to assist consumers experiencing debt harassment or abusive debt collection practices.

## JURISDICTION AND VENUE

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331 and pursuant to 15 U.S.C. §1692k(d), and pursuant to 28 U.S.C. §1367 for pendent state law claims.

4. The alleged violations described herein occurred in Pasco County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## COMMON FACTUAL ALLEGATIONS

5. Plaintiff, Mr. Harris, is a natural person, and citizen and resident of Hillsborough County, Florida.

6. DNA is a debt collector and attempts to collect payment on past due debts throughout the State of Florida, including Hillsborough County, Florida.

7. DNA is a debt collector as it regularly attempts to collect payment on behalf of creditors, and regularly tries to obtain payment of consumer debts through

legal proceedings and regularly attempts to collect debts that were originally owed to others.

8. Arctic Air provides repair services to its customers and regularly tries to collect payments and debts from said customers.

9. All references to either of the Defendants named herein shall also include any of Defendant's predecessors.

10. In or around January 2018, Mr. Harris purchased a Manitowoc Ice Machine (the "Ice Machine").

11. Mr. Harris is a physician and an avid sport fisherman.

12. Mr. Harris purchased the Ice Machine for his own personal use. Mr. Harris goes fishing a lot and uses over fifty pounds (50lbs) of ice every time he goes out. Thus, purchasing the Ice Machine was ideal to generate enough ice to meet his needs.

13. Mr. Harris kept the Ice Machine at his personal residence and used the Ice Machine solely and exclusively for his own personal use.

14. After Mr. Harris purchased the Ice Machine, it broke down.

15. Mr. Harris performed an internet search to locate a certified Manitowoc repair specialist.

16. Mr. Harris found Arctic Air on-line and contacted them.

17. Arctic Air came to Mr. Harris' home to look at the Ice Machine and provide Mr. Harris a quote to fix it.

18. After arriving at his home and inspecting the Ice Machine, Arctic Air advised Mr. Harris that they could fix it and that the unit was still covered by warranty so he would not have to pay anything for the repair.

19. Arctic Air did not provide Mr. Harris any paperwork regarding the repair and Mr. Harris did not sign anything.

20. Mr. Harris agreed to let Arctic Air repair the Ice Machine because they advised him it was covered by warranty and that he would not have to pay anything or do anything else.

21. Mr. Harris only let Arctic Air repair the Ice Machine due to their representations that it was covered by warranty.

22. On November 26, 2019, Mr. Harris received an invoice from Arctic for $1,232.58.

23. Mr. Harris was stunned by this invoice as Arctic Air advised him that he would not have to pay anything, and this amount was over sixty percent (60%) of what he had paid for the Ice Machine in the first place.

24. Mr. Harris immediately contacted Arctic Air and they advised him that it had not been covered by warranty because the Ice Machine was located at a residential address.

25. Mr. Harris advised them that they knew it was at a residential address when they performed the repair and that they never advised him that it was a

possibility that he would have to pay anything. He further explained that he had not signed anything and would never have agreed to any repair but for Arctic Air's representations that the repair was fully covered by the warranty.

26. Mr. Harris never heard from Arctic Air again and believed that the matter was resolved.

27. Thereafter, on or about July 12, 2021, Mr. Harris received a collection letter from DNA (the "Debt Collection Letter"). A true and correct copy of the Debt Collection Letter is attached hereto as Exhibit "A" and its contents are incorporated by reference herein.

28. Pursuant to the Debt Collection Letter, DNA claimed that it was attempting to collect a debt on behalf of Arctic Air (the "Consumer Debt").

29. Pursuant to the Debt Collection Letter, Defendants demanded payment for the Consumer Debt from Mr. Harris.

30. Defendants attempted to collect the Consumer Debt from Mr. Harris by sending him the Debt Collection Letter.

31. The Debt Collection Letter is a collection attempt because Defendants demanded payment for the Consumer Debt pursuant to the Debt Collection Letter.

32. The Debt Collection Letter is a collection attempt because it demands payment for the Consumer Debt and sets forth the means and method by which payment must be made.

33. The Debt Collection Letter provides instructions for payment of the Consumer Debt.

34. The Debt Collection Letter provides for penalties if payment is not made by a certain date.

35. The Debt Collection Letter improperly seeks payment of the Consumer Debt as Mr. Harris was advised that the repair was covered by warranty and he would not have agreed to the repair but for said representation.

36. The Debt Collection Letter hides the true character of the Consumer Debt and impairs Mr. Harris' ability to knowledgeably assess the validity of the Consumer Debt.

37. The Debt Collection Letter is misleading on its face.

38. Defendants knew that they were not entitled to attempt to collect the Consumer Debt from Mr. Harris as they knew that they had advised Mr. Harris that it would be covered by warranty.

39. All conditions precedents to this action have been fulfilled, waived or performed.

## COUNT I
### (Mr. Harris v. DNA)
### (Violation of the FDCPA)

40. Mr. Harris incorporates Paragraphs one (1) through thirty-nine (39) above as if fully set forth herein.

41. This is an action against Defendant, DNA, for violations of the Federal Fair Debt Collection Practices Act 15 U.S.C. §1692, *et. seq.* (FDCPA), and for damages in excess of $15,000.00, exclusive of interest, court costs and attorneys' fees.

42. The Consumer Debt is a consumer debt within the meaning of the FDCPA. This is so because it was incurred for Mr. Harris' personal use; namely to make ice for his personal use with respect to his recreation and personal fishing trips, and thereby created an obligation for Mr. Harris to pay money arising out of a transaction which was primarily for personal, family, or household purposes.

43. Mr. Harris is a natural person that was the borrower of and obligated to pay the Consumer Debt.

44. Defendant, DNA, is a debt collector within the meaning of the FDCPA. This is so because:

    a. DNA is a person that uses the U.S. Mail, correspondence, fax transmissions, email, lawsuits and other instrumentalities of interstate commerce in sending communications such as the Debt Collection Call for the Consumer Debt; and

    b. DNA's principal business purpose is the collection of debts, as DNA regularly calls, sends collections letters and files collection lawsuits

    throughout the State of Florida in order to collect delinquent consumer debts for another person as it did for the Consumer Debt; and

  c. DNA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another as it did for the Consumer Debt on behalf of Arctic Air.

45. The Debt Collection Letter is an attempt to collect the Consumer Debt.

46. The Debt Collection Letter demanded payment for amounts that were not due and owing.

47. The illegal amounts sought in the Debt Collection Letter are substantial and material.

48. The Debt Collection Letter is misleading because it gave a false impression of the character and/or amounts of the Consumer Debt, namely that Mr. Harris was advised the repair was covered by warranty.

49. The Debt Collection Letter is a false representation as to the correct legal amounts regarding the Consumer Debt and an attempt to collect illegal amounts.

50. As a result of DNA's conduct as described herein, DNA has violated: 15 U.S.C. §1692(e), 15 U.S.C. §1692(e)(2)(A), 15 U.S.C. §1692(e)(5), 15 U.S.C. §1692(e)(10), 15 U.S.C. §1692(f) and/or 15 U.S.C. §1692(f)(1), which provide:

> *§1692(e) A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*
>
> > *(2) The false representation of—*
> > *(A) the character, amount, or legal status of any debt.*
>
> *(5) Threaten to take any action that cannot legally be taken or that is not intended to be taken*
>
> *(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*
>
> *§1692(f) A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*
> > *(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

51. As a result of DNA's debt collection conduct as described herein, Mr. Harris has been injured, has suffered from unnecessary and unwanted sleeplessness, worry, anxiety, fear, frustration, anger, and loss of his personal and professional time.

52. Mr. Harris: (a) is entitled to collect his attorney's fees and costs pursuant to 15 U.S.C. §1692(k); (b) has retained the law firm of Florida Consumer Lawyers in this action; and (c) is obligated to pay the law firm of Florida Consumer

Lawyers a reasonable fee for its services in bringing or defending in this case, as well as all costs of collections.

WHEREFORE, Plaintiff, Mr. Harris, respectfully requests relief in the form of: (i) actual damages, interest, court costs and attorney's fees; (ii) statutory damages in the minimum amount of $1,000.00 per violation; (iii) a trial by jury; and (iv) such other and further relief in law or equity that the Court deems just an appropriate under the circumstances.

## COUNT II
### (Mr. Harris v. DNA)
### (Violation of the FCCPA)

53. Mr. Harris incorporates Paragraphs one (1) through thirty-nine (39) above as if fully set forth herein.

54. This is an action against Defendant, DNA, for violations of Florida's Consumer Collections Practices Act, <u>Florida Statutes</u>, §559, Part VI, *et. seq.* (FCCPA), and for damages in excess of $15,000.00, exclusive of interest, court costs and attorneys' fees.

55. The Consumer Debt is a consumer debt within the meaning of the FCCPA. This is so because it was incurred for Mr. Harris' personal use; namely to make ice for his personal use with respect to his recreation and personal fishing trips; and thereby created an obligation for Mr. Harris to pay money arising out of a transaction which was primarily for personal, family, or household purposes.

56. Mr. Harris is a natural person that was the borrower of and obligated to pay the Consumer Debt.

57. DNA is a debt collector within the meaning of the FCCPA. This is so because:

    a. DNA is a person that uses the U.S. Mail, correspondence, fax transmissions, email, lawsuits and other instrumentalities of interstate commerce in sending communications such as the Debt Collection Letter for the Consumer Debt; and

    b. DNA's principal business purpose is the collection of debts, as SAS regularly calls, sends collections letters and files collection lawsuits throughout the State of Florida in order to collect delinquent consumer debts for another person as it did for the Consumer Debt; and

    c. DNA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another as it did for the Consumer Debt on behalf of Arctic Air.

58. The Debt Collection Letter is an attempt to collect the Consumer Debt.

59. The Debt Collection Letter demanded payment for amounts that had Mr. Harris had been advised were covered by warranty.

60. DNA had actual knowledge of the Debt Collection Letter seeking amounts due that Mr. Harris was previously advised were covered by warranty. Mr. Harris would never have agreed to permit the repairs but for Arctic Air's representations regarding warranty coverage.

61. The illegal amounts sought in the Debt Collection Letter are substantial and material.

62. The Debt Collection Letter is misleading because it gave a false impression of the character and/or amounts of the Consumer Debt.

63. The Debt Collection Letter is a false representation as to the correct legal amounts regarding the Consumer Debt and attempt to collect illegal amounts.

64. The Debt Collection Letter constitutes "communication" as defined by Florida Statutes, §559.55(2) because it conveyed information such as the alleged amounts owed for the Consumer Debt and who allegedly owed such Consumer Debt, to Mr. Harris who is a person and such "communication" was in the form of a telephone call, the U.S. Mail, correspondence, fax transmissions and/or email.

65. As a result of DNA's conduct as described herein, DNA has violated Florida Statutes, §559.72(9) which makes it unlawful to: "*[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.*"

66. As a result of DNA's debt collection conduct as described herein, Mr. Harris has been injured, has suffered from unnecessary and unwanted sleeplessness, worry, anxiety, fear, frustration, anger, and loss of his personal and professional time.

67. Mr. Harris: (a) is entitled to collect his attorney's fees and costs pursuant to the Florida Statutes, §559.77(2); (b) has retained the law firm of Florida Consumer Lawyers in this action; and (c) is obligated to pay the law firm of Florida Consumer Lawyers a reasonable fee for its services in bringing or defending in this case, as well as all costs of collections.

WHEREFORE, Plaintiff, Mr. Harris, respectfully requests relief in the form of: (i) actual damages, interest, court costs and attorney's fees pursuant to Florida Statutes, § 559.77(2); (ii) statutory damages in the minimum amount of $1,000.00 per violation; (iii) a trial by jury; and (iv) such other and further relief that this Court deems just and proper under the circumstances.

### COUNT III
### (Mr. Harris v. Arctic Air)
### (Violation of the FCCPA)

68. Mr. Harris incorporates Paragraphs one (1) through thirty-nine (39) above as if fully set forth herein.

69. This is an action against Defendant, Arctic Air, for violations of Florida's Consumer Collections Practices Act, Florida Statutes, §559, Part VI, *et.*

*seq.* (FCCPA), and for damages in excess of $15,000.00, exclusive of interest, court costs and attorneys' fees.

70. The Consumer Debt is a consumer debt within the meaning of the FCCPA. This is so because it was incurred for Mr. Harris' personal use; namely to make ice for his personal use with respect to his recreation and personal fishing trips; and thereby created an obligation for Mr. Harris to pay money arising out of a transaction which was primarily for personal, family, or household purposes.

71. Mr. Harris is a natural person that was the borrower of and obligated to pay the Consumer Debt.

72. Arctic Air is engaged in the business of soliciting consumers for debts and collecting consumer debts and is, therefore, subject to Florida Statutes, §559.55 *et seq.*

73. The Debt Collection Letter is an attempt to collect the Consumer Debt.

74. The Debt Collection Letter demanded payment for amounts that had Mr. Harris had been advised were covered by warranty.

75. Arctic Air had actual knowledge of the Debt Collection Letter seeking amounts due that Mr. Harris was previously advised were covered by warranty. Mr. Harris would never have agreed to permit the repairs but for Arctic Air's representations regarding warranty coverage.

76. The illegal amounts sought in the Debt Collection Letter are substantial and material.

77. The Debt Collection Letter is misleading because it gave a false impression of the character and/or amounts of the Consumer Debt.

78. The Debt Collection Letter is a false representation as to the correct legal amounts regarding the Consumer Debt and attempt to collect illegal amounts.

79. The Debt Collection Letter constitutes "communication" as defined by Florida Statutes, §559.55(2) because it conveyed information such as the alleged amounts owed for the Consumer Debt and who allegedly owed such Consumer Debt, to Mr. Harris who is a person and such "communication" was in the form of a telephone call, the U.S. Mail, correspondence, fax transmissions and/or email.

80. As a result of Arctic Air's conduct as described herein, DNA has violated Florida Statutes, §559.72(9) which makes it unlawful to: "*[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.*"

81. As a result of Arctic Air's debt collection conduct as described herein, Mr. Harris has been injured, has suffered from unnecessary and unwanted sleeplessness, worry, anxiety, fear, frustration, anger, and loss of his personal and professional time.

82. Mr. Harris: (a) is entitled to collect his attorney's fees and costs pursuant to the Florida Statutes, §559.77(2); (b) has retained the law firm of Florida Consumer Lawyers in this action; and (c) is obligated to pay the law firm of Florida Consumer Lawyers a reasonable fee for its services in bringing or defending in this case, as well as all costs of collections.

WHEREFORE, Plaintiff, Mr. Harris, respectfully requests relief in the form of: (i) actual damages, interest, court costs and attorney's fees pursuant to Florida Statutes, § 559.77(2); (ii) statutory damages in the minimum amount of $1,000.00 per violation; (iii) a trial by jury; and (iv) such other and further relief that this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

By: / s / Sami Thalji
Sami Thalji, Esquire, Trial Counsel
Florida Bar No.:
Melissa Miller Thalji, Esquire
Florida Bar No.:174467
FLORIDA CONSUMER LAWYERS
P.O. Box 341499
Tampa, Florida 33694
(813) 282-9330 (telephone)
(813) 282-8648 (facsimile)
Notice of Primary Email: Service@FloridaCL.com
Counsel for Plaintiff